Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | John W. Darrah | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 3573 | **DATE** | 2/1/2002 |
| **CASE TITLE** | MARIE RINALDI vs. WORLD BOOK, INC. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion And Order. Defendant's renewed motion for judgment as a metter of law is denied. Defendant's alternative motion for a Remittitur is denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | Document Number |
|---|---|---|---|
| | No notices required, advised in open court. | number of notices | |
| | No notices required. | | |
| | Notices mailed by judge's staff. | FEB 0 4 2002 | |
| | Notified counsel by telephone. | date docketed | 51 |
| ✓ | Docketing to mail notices. | | |
| ✓ | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| LG | courtroom deputy's initials | 02 FEB -1 PM 4: 02 | date mailed notice |
| | | Date/time received in central Clerk's Office | mailing deputy initials |


MARIE RINALDI and KATHY HICKS, )
)
    Plaintiffs, )
)
)
v. )    No. 00 CV 3573
)
)    Hon. John W. Darrah
WORLD BOOK, INC., )
)
    Defendant. )
)

## MEMORANDUM OPINION AND ORDER

On October 29, 2001, a jury returned a special verdict in favor of both Plaintiffs, Marie Rinaldi (Rinaldi) and Kathy Hicks (Hicks), on Plaintiffs' Title VII sex discrimination and Equal Pay Act (EPA) claims. The jury awarded Rinaldi $73,600 in actual damages on her Equal Pay Act claim, Hicks $60,000 in actual damages on her EPA claim, and $100,000 for each Plaintiff in punitive damages. Presently before the Court is Defendant's, World Book, Inc.'s (World Book), Renewed Motion for Judgment as a Matter of Law or in the Alternative For Remittitur.

A court should render judgment as a matter of law when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed. R. Civ. P. 50(a); *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133, 149 (2000) (*Reeves*). In entertaining a motion for judgment as a matter of law, the court reviews all of the evidence in the record and draws all reasonable inferences in favor of the nonmoving party. The court does not make credibility determinations or weigh the evidence. *Reeves*, 530 U.S. at 151.

World Book first argues that it is entitled to judgment as a matter of law on the Plaintiffs'



Title VII sex discrimination claims because the Plaintiffs failed to establish that they were paid less than similarly situated employees.

To succeed on a Title VII claim in the wage discrimination context, a plaintiff must "produce evidence that she was paid less than similarly situated male or males". *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 478 (7th Cir. 1995).

World Book contends that Loren Jacobson (Jacobson) is not a similarly situated employee, as argued at trial, because he was "uniquely situated because of his knowledge of World Book's computer systems". Plaintiffs contend that Jacobson is a similarly situated employee at the time the Plaintiffs and Jacobson received their severance package because, at that time, Jacobson and the Plaintiffs had similar duties and responsibilities.

The evidence presented in the instant case included testimony that Jacobson had been responsible for managing World Book's computer system and that the six-month consulting agreement with Jacobson was required for the proper maintenance of the computer system. However, at the time the Plaintiffs and Jacobson received their severance pay, and Jacobson received his consulting agreement, most of World Book's computer operations had been transferred to a different state. In addition, Jacobson did not have experience with some of the new computer systems as did the consultant who took Jacobson's place. When Jacobson received his severance package, his primary duties included generating sales payroll, which both plaintiffs had previously completed before, and preparing reports using data provided by the Plaintiffs and others. The jury returned a special verdict finding, in pertinent part, that the jobs performed by the Plaintiffs "required substantially equal skill, effort and responsibility as the job performed by ... Jacobson". The above evidence was sufficient for a reasonable jury to find that the Plaintiffs and Jacobson were similarly

2

situated and that Jacobson received a greater amount of severance pay than the Plaintiffs.

World Book next argues that the jury could not have reasonably found that World Book engaged in intentional discrimination. Plaintiffs argue that they established sufficient evidence of discrimination.

In a Title VII discrimination suit, the plaintiff has the burden of establishing discrimination either through the direct method of proof or the indirect method of proof, as set forth in *McDonnell Douglas Corp v. Green*, 411 U.S. 792 (1973). *See Gorence v. Eagle Food Ctr., Inc.*, 242 F.3d 759, 761-62 (7th Cir. 2001) (*Gorence*). Under the direct method of proof, a plaintiff must establish either an acknowledgment of discriminatory intent by the defendant or sufficient circumstantial evidence that provides the basis for an inference of intentional discrimination. *Gorence*, 242 F.3d at 762. Such circumstantial evidence includes suspicious timing, ambiguous statements, evidence that similarly situated employees were treated differently, and the defendant's reason for any different treatment is a pretext for discrimination. *Gorence*, 242 F.3d at 762.

Here, there was sufficient circumstantial evidence for a reasonable jury to find that the Plaintiffs provided an inference of intentional discrimination. This evidence included the timing of Jacobson's consulting agreement and the circumstances surrounding Jacobson's severance package and consulting agreement, including that the consulting agreement provided Jacobson with the amount of severance pay he would have received under the "old" severance plan; the fact that Jacobson's original severance package did not include a consulting agreement; and the fact that Jacobson's consulting agreement was added to the second severance package after William Phillips (Phillips) told Ralph Schey (Schey), the Chief Executive Officer of World Book, that providing Jacobson severance pay equal to that under the "old" plan was "begging for a charge of

discrimination" and that Schey subsequently told Phillips that he arranged for the problem to be "fix[ed]" and not to speak to anyone about the arrangement with Jacobson. Furthermore, the evidence establishing that the Plaintiffs were treated differently than Jacobson, as discussed above, and that the reasons set forth by World Book for such difference was simply a pretext to pay Jacobson under the "old" severance package supports the jury's finding of intentional discrimination.

As to the Plaintiffs' EPA claims, World Book argues that judgment should be entered for Defendant because the severance pay Plaintiffs sought were not "wages" under the EPA.

The EPA provides, in pertinent part, that "[n]o employer ... shall discriminate ... between employees on the basis of sex by paying wages to employees ... at a rate less than that which he pays wages to employees of the opposite sex ... for equal work...." 29 U.S.C. § 206(d)(1). The EPA does not define the term "wages". As such, the courts refer to the regulations adopted by the Department of Labor for its interpretation of the EPA. *See Williams v. D. Richey Mgt. Corp.*, 1988 WL 117498 (N.D. Ill. Oct. 27, 1988); *Laffey v. Northwest Airlines, Inc.*, 642 F.2d 578, 588 (D.C. Cir. 1980). Under the corresponding regulations, "wages" are defined as "all payments made to (or on behalf of) an employee as remuneration for employment. The term includes all forms of compensation irrespective of the time of payment, whether ... deferred until a later date, and whether called wages, salary, profit sharing, expense account ... or some other name. Fringe benefits are deemed to be remuneration for employment." 29 C.F.R. § 1620.10. Fringe benefits include "insurance and retirement benefits; profit sharing and bonus plans; leave; and other such concepts". 29 C.F.R. § 1620.11.

The parties, nor this Court, were able to find any authority finding that severance pay is or is not considered wages under the EPA. As stated above, under the EPA, wages are "all payments

4

made ... as remuneration for employment". To remunerate is "to pay an equivalent to (a person) for a service, loss, or expense". Webster's Third Int'l Dictionary 1921 (1986).

Here, World Book referred to its severance package as a "benefit". World Book's severance pay was paid to employees upon the loss of their position with the company. Accordingly, the severance pay constituted payments made as remuneration for employment -- a payment made for the loss of employment. *See* 29 C.F.R. § 1620.10; 29 C.F.R. § 1620.11; *see also Bradwell v. GAF Corp.*, 954 F.2d 798, 801 (2nd Cir. 1992) (severance packages generally serve the purpose of rewarding employees for past service to the company); *Kulins v. Malco*, 121 Ill. App. 3d 520, 525 (1984) (severance pay is frequently characterized as a form of deferred compensation). Based on the above, World Book's severance pay constituted wages for purposes of the EPA.

World Book also argues that the award of punitive damages to Plaintiffs should be vacated or reduced because the award was excessive.

Three factors are considered in evaluating whether a punitive damages award is excessive: (1) the degree of reprehensibility of the defendant's misconduct, (2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award, and (3) the difference between the civil penalties authorized or imposed in comparable cases. *BMW of North America v. Gore*, 517 U.S. 559, 575 (1996) (*Gore*). A court may set aside a jury's award of punitive damages only if the court is certain that the award exceeds what is necessary to serve the objectives of punishment and deterrence. *EEOC v. AIC Sec. Investigations*, 55 F.3d 1276, 1287 (7th Cir. 1995) (*AIC*).

As to the first factor, the jury concluded that Plaintiffs' sex was a motivating factor in World Book's decision to pay Plaintiffs less severance pay than some male employees. The jury also

5

concluded, as indicated on the special verdict form, that World Book acted with malice or with a reckless indifference to the rights of the Plaintiffs to be free from intentional discrimination. After making these conclusions, the jury awarded each Plaintiff $100,000 in punitive damages. The above demonstrates that the jury found that World Book engaged in sexual discrimination and that such discrimination was reprehensible conduct. *See Miller v. Rockford Register Star*, 2001 WL 637575 (N.D. Ill. June 8, 2001) (jury was entitled to conclude that defendant subjected plaintiff to sexual harassment and such constituted sufficiently reprehensible conduct to support a punitive damage award of $100,000).

The second factor compares any disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award. *Gore*, 517 U.S. at 575. Punitive damages are available even when the jury does not assess compensatory damages. *See Timm v. Progressive Steel Treating, Inc.*, 137 F.3d 1008, 1010 (7th Cir. 1998).

In the instant case, the jury awarded each Plaintiff $0.00 compensatory damages under their Title VII claims and $100,000 in punitive damages. Therefore, it would appear that the jury awarded Plaintiffs' punitive damages in the ratio of 100,000 : 1. However, the jury also awarded compensatory damages for each of the Plaintiffs' EPA claims, $60,000 for Hicks and $73,600 for Rinaldi, which constituted the amount of severance pay the Plaintiffs would have received under the "old" severance plan. These amounts would also constitute the potential harm suffered by the Plaintiffs for World Book's discriminatory conduct. The potential harm is properly used to compare the disparity of harm suffered by a plaintiff and the punitive damages awarded. *See Gore*, 517 U.S. at 575; *TXO Prod. Corp. v. Alliance Resources Corp.*, 509 U.S. 443, 460 (1993). Therefore, the ratios for both awards in the present case is more properly considered as less than 2 :1. This ratio

6

is not excessive. *See e.g., AIC*, 55 F.3d at 1287 (ratio of 3 :1 not excessive); *Brown v. Williamson Tabacco Corp. v. Jacobson*, 827 F.2d 119, 1142-43 (ratio of greater than 2 :1 not excessive).

As to the third factor, the $100,000 awarded to each plaintiff is not inoncistent with awards upheld by the Seventh Circuit in the past. *See AIC*, 55 F.3d at 1287 (upholding punitive damages award of $150,000 for a disability discrimination claim); *Hamed v General Accident Ins. Co.*, 842 F.2d 170, 174-75 (7th Cir. 1988) (upholding punitive damage award of $100,000 for a bad-faith breach of insurance claim); *Williamson v. Handy Button Mach.*, 817 F.2d 1290, 1296 (7th Cir. 1987) (suggesting that a $100,000 punitive damage award in a race employment discrimination suit was not excessive).

For the reasons stated above, Defendant's Renewed Motion for Judgment as a Matter of Law is denied. Defendant's Alternative Motion for a Remittitur is denied.

Dated: February 1, 2002

JOHN W. DARRAH
United States District Judge